UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **MARK LENARD** | **CIVIL ACTION NO. 03-2054** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **LFI FORT PIERCE, INC.**<br>**d/b/a "LABOR FINDERS"** | **MAG. JUDGE JAMES D. KIRK** |

### RULING

Mark Lenard ("Lenard") brought this action against LFI Fort Pierce, Inc., ("Labor Finders"), alleging sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII").

Pending before the Court is a Motion for Summary Judgment [Doc. No. 11], filed by Labor Finders. For the following reasons, Labor Finders' Motion for Summary Judgment is hereby GRANTED IN PART AND DENIED IN PART.

**I.    FACTS AND PROCEDURAL HISTORY**

On August 13, 2001, Lenard began his employment with Labor Finders, a placement service for day laborers. Lenard's job duties primarily included driving a van that picked up and dropped off employees at job sites. Lenard's other job duties included cleaning the office and performing miscellaneous custodial tasks.

Prior to his employment with Labor Finders, Lenard was involved in an intimate relationship with Patty Langlois ("Langlois"). Langlois was an assistant manager at Labor Finders and supervised Lenard during his employment. Lenard and Langlois' relationship continued after Lenard began working for Labor Finders. Lenard terminated their relationship in

the Fall of 2001.¹  However, Lenard and Langlois remained friends.  Between their breakup and Lenard's termination from Labor Finders on May 28, 2002, he claims that Langlois sexually harassed him.

Lenard alleges that during this time period Langlois consistently talked about having sex with Lenard, tried to kiss him, and tried to persuade him to "[l]et me [Langlois] come by your house after work."  Lenard claims that Langlois' behavior occurred on a daily basis.

Lenard points to two specific instances of sexual harassment.  On one occasion, Lenard claims that Langlois cornered him in the storage area and tried to kiss him.  On another occasion, Lenard alleges that Langlois came into his office and grabbed his private parts.

Labor Finders has a sexual harassment policy.  This policy defines sexual harassment, provides guidelines of how to report sexual harassment, and describes what actions Labor Finders will take when sexual harassment is reported.

Lenard claims he complained to Cynthia Mathis ("Cynthia") for approximately three to four months.²  Around April 2002, Lenard approached the Area Manager of Labor Finders, Cleve Mathis ("Cleve"), with his complaints.  After conducting an investigation, on April 1, 2002, Cleve told Langlois to limit her conversations with Lenard to Labor Finders' business.  Cleve and Cynthia received no other complaints from Lenard after this discussion.  Sometime in April 2002, Langlois and Lenard took a personal trip to Arkansas as friends.

Lenard was fired on May 28, 2002, for accumulating several reprimands during his

---

¹Although the exact date Lenard terminated the relationship is unclear, it appears to be sometime around Thanksgiving, 2001.

²The Court notes that Cynthia is also a supervisor at Labor Finders.

employment. These violations include such things as: (1) neglecting his custodial duties; (2) exposing his rear end to Langlois; (3) having pornography in the workplace; (4) reckless driving; (5) slapping Langlois on the rear end and discussing her breasts; and (6) insubordination.

On January 21, 2003, Lenard filed a perfected charge of discrimination with the Equal Employment Opportunity Commission. On August 18, 2003, Lenard received a notice of right to sue.

On November 6, 2003, Lenard filed a complaint against Labor Finders asserting claims of sexual harassment and retaliatory discharge.

On May 13, 2005, Labor Finders filed a Motion for Summary Judgment. On June 20, 2005, Lenard filed a Memorandum in Opposition. On July 1, 2005, Labor Finders filed a Reply.

With full briefing by all parties completed, the Court is now prepared to rule on the Motion for Summary Judgment.

## II. LAW AND ANALYSIS

### A. Summary Judgment

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record that highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a fact is "genuine" if the evidence is such that a

reasonable fact finder could render a verdict for the nonmoving party.  *Id.*  The moving party cannot satisfy its initial burden simply by setting forth conclusory statements that the nonmoving party has no evidence to prove its case.  *Ashe v. Corley*, 992 F.2d 540, 543  (5th Cir. 1993).

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial.  *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994).  "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which the evidence supports his or her claim."  *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  The nonmoving party must show more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd.  v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In evaluating the evidence tendered by the parties, the court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor.  *Anderson*, 477 U.S. at 255.

### B. Sexual Harassment

Title VII forbids employers from taking actions on the basis of sex that "discriminate against any individual with respect to [his] compensation, terms, conditions, or privileges of employment."  42 U.S.C. § 2000e-2(a)(1).  Sexual harassment is a form of sex discrimination prohibited under Title VII.  *See Meritor Savings Bank v. Vinson,* 477 U.S. 57 (1986).

To prevail on a sex-based harassment claim alleging hostile work environment, the plaintiff must prove: (1) he belongs to a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on sex; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.  *Green v.*

4

*Adm'rs. of the Tulane Educ. Fund*, 284 F.3d 642, 655 (5th Cir. 2002) (internal citation omitted). When the harassment is committed by a supervisor with immediate or successively higher authority over the harassment victim, the employee need only prove the first four elements.[3] An employer may raise an affirmative defense by showing that it exercised reasonable care to prevent and promptly correct the harassing behavior and that the employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer. *Faragher v. City of Boca Raton*, 524 U.S. 775, 808 (1998).

In determining whether a workplace constitutes a hostile work environment, courts should look at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Id*. at 787-88. Title VII does not prohibit "genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex." *Oncale v. Sundowner Offshore Svcs. Inc.*, 523 U.S. 75, 81 (1998). A recurring point in the Supreme Court's hostile environment cases is that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment. *Faragher*, 524 U.S. at 788. The standards set forth by the Supreme Court seek to ensure that Title VII does not become a "general civility code." *Oncale*, 523 U.S. at 80. Properly applied, these standards will filter out complaints attacking "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing."

---

[3]In this case, because Langlois was one of Lenard's immediate supervisors, he need only prove the first four elements to establish a prima facie case of sexual harassment.

*Faragher*, 524 U.S. at 788 (quoting B. Lindemann & D. Kadue, Sexual Harassment in Employment Law 172 (1992)). The Supreme Court has made it clear that conduct must be so extreme, so severe and pervasive, as to amount to a change in the terms and conditions of employment. *Id.* The objective severity of the harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances. *Oncale*, 523 U.S. at 81.

In its Motion for Summary Judgment, Labor Finders argues that the alleged harassment was not objectively severe and pervasive. Labor Finders also argues that it promptly corrected any alleged sexual harassment of which it was notified.

Lenard claims that Langlois sexually harassed him on a daily basis. Lenard alleges that between the months of November 2001 and March 2002 Langlois was "always trying to kiss me, always trying to have sex with me, talking about, 'Let me [Langlois] come by your house after work,'... I mean, it was every day." Other than his general allegations, Lenard points to only two specific instances of harassment that occurred in the workplace. On one occasion, Lenard claims that Langlois cornered him in the storage area and tried to kiss him. On another occasion, Lenard claims Langlois tried to grab his private parts.

However, during this time period, Lenard also admits to engaging in sexually explicit conversations with his co-workers, and making inappropriate remarks about the size of Langlois' breasts.

Labor Finders states that when Lenard reported the alleged sexual harassment to Cleve, he immediately investigated and addressed the situation. Langlois denied the incidents ever occurred, and Cleve told Langlois to limit her conversations with Lenard to Labor Finders'

business.  Lenard alleges that Cleve dissuaded him from filing an official report; however, Lenard admits that Cleve met with both parties and addressed his allegations.  In addition, Labor Finders claims that even after this meeting, Lenard took a personal trip with Langlois to Arkansas in April 2002 as friends.

Even accepting all evidence submitted by Lenard as credible and drawing all inferences in his favor, the Court concludes that a reasonable person in Lenard's position would not find Langlois' conduct to be severely hostile or abusive.  Although some of the alleged conduct may have been offensive or inappropriate, the incidents at Labor Finders were the type that the courts have routinely and consistently determined are not severe enough to be so extreme to change the terms and conditions of Lenard's employment.  *See Hockman v. Westward Commc'n, L.L.C.*, 2003 WL 22176152 at *20 (E.D. Tex. Sept. 18, 2003) (finding that brushings, one attempted kiss, and one isolated grabbing of plaintiff's breasts is not severe and pervasive as a matter of law); *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 873 (5th Cir. 1999) (finding that several inappropriate comments and touchings over the course of two years were not objectively severe or pervasive enough to constitute actionable sexual harassment); *Weiss v. Coca-Cola Bottling Co.*, 990 F.2d 333, 337 (7th Cir. 1993) (finding that conduct that included attempting to kiss plaintiff twice at work, several incidents of unwanted touching, and asking plaintiff out on dates were not sufficient for actionable harassment).

Because the alleged harassment was not objectively severe and pervasive, it did not affect a term, condition, or privilege of Lenard's employment at Labor Finders, and Lenard has not

7

established a prima facie case of sexual harassment.[4] Labor Finders' Motion for Summary Judgment on this claim is GRANTED.

## C. Retaliation

In order to state a prima facie case of retaliation, Lenard must show that (1) he engaged in an activity protected by law; (2) an adverse employment action occurred; and (3) there was a causal connection between the participation in the protected activity and the adverse employment action. *See Shackleford v. Deloitte & Touch, LLP*, 190 F.3d 398, 407-408 (5th Cir. 1999). The causal link required by the third prong of the prima facie case does not rise to the level of a "but for" standard. *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002) (citation omitted). If a plaintiff makes a prima facie showing, then "an inference of retaliatory motive" is raised. *Fierros v. Texas Dep't of Health*, 274 F.3d 187, 191 (5th Cir. 2001) (citing *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001)).

To overcome this retaliatory inference, the defendant must produce evidence of a legitimate nonretaliatory purpose for the employment action. *Gee*, 289 F.3d at 345 (citation omitted); *see also Fierros*, 274 F.3d at 191.

Finally, if the defendant satisfies its burden of production, the plaintiff must prove that the employer's stated reason for the adverse action was merely a pretext for the real, retaliatory purpose. *Gee*, 289 F.3d at 345.

Lenard argues that because he complained of Langlois' sexual harassment he was terminated two months later. Labor Finders argues that Lenard was terminated because he had

---

[4]Because Lenard cannot prove that the alleged harassment was severe and pervasive enough to affect a term or condition of his employment, the affirmative defense offered by Labor Finders need not be addressed.

several reprimands and write-ups. Lenard responds that the reprimands and "write-ups" are pretext for retaliation.

The Court concludes that Lenard has established a prima facie case for retaliation. First, Lenard has shown that he engaged in protected activity by complaining of sexual harassment. Second, Lenard suffered an adverse employment action when he was terminated. Third, Lenard has demonstrated a causal connection between his complaint of sexual harassment and his termination. The standard for establishing the "causal link" element of the plaintiff's prima facie case is much less stringent than the "but for" standard. *Long v. Eastfield Coll.*, 88 F.3d 300, 305 n.4 (5th Cir. 1996). The Supreme Court has found that temporal proximity may be sufficient when the timing between the protected activity and adverse employment action is "very close." *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). The Court believes the two-month span supports Lenard's causal link and satisfies his prima facie burden. *See Washington v. Town of Gramercy*, 2004 WL 60320 at *5 (E.D. La. Jan. 12, 2004) (finding two months between filing of complaint and termination sufficient to satisfy third factor of causation).

Labor Finders argues that it fired Lenard for a legitimate non-retaliatory reason. Labor Finders contends that throughout Lenard's employment, in addition to consistent verbal reprimands, Lenard received several write-ups for his conduct. These write-ups include conduct such as: (1) bringing pornography to work on December 12, 2001; (2) showing his rear end to Langlois on January 8, 2002; (3) driving recklessly and failing to deliver the mail to the post office on February 5, 2002; (4) slapping Langlois on the rear end and talking about Langlois' breasts on February 12, 2002; and (5) neglecting his office duties and insubordination on May 25, 2002.

Because Labor Finders has proffered a legitimate non-retaliatory reason for the challenged employment action, the burden shifts back to Lenard to demonstrate the proffered rationale is merely pretext for retaliation.

Whether the evidence presented by the plaintiff is direct or circumstantial, it must be substantial. *Hamlett v. Gonzales*, 2005 WL 1500819 at *12 (N.D. Tex. June 15, 2005) (citing *Nichols v. Lewis Grocer*, 138 F.3d 563, 566 (5th Cir. 1998)). A plaintiff's prima facie case, combined with sufficient evidence that the employer's justification is false, may permit the fact finder to conclude that the defendant unlawfully discriminated. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000).

Lenard argues that he received only two of the five write-ups. Lenard claims he received notification of the write-ups issued on February 5, 2002, and May 25, 2002.[5] Lenard emphatically denies slapping Langlois on the rear end, showing his rear end to Langlois, and bringing pornography to work. In addition, Lenard states that despite his complaints to Cynthia about Langlois' conduct during this time period, Langlois never received any reprimands.

Lenard also argues that these write-ups were never presented during an unemployment compensation hearing, and a reasonable fact finder can infer that three of the write-ups are false and created solely for the purpose of this litigation.

The Court finds that the evidence presented by Lenard creates an issue of fact. Lenard was fired within two months of complaining of sexual harassment. In addition, during the time period Lenard received write-ups he contends are false, Langlois never received any write-ups,

---

[5]Lenard admits to being written up for reckless driving, failing to carry the mail to the post office, and insubordination.

10

despite Lenard's complaints to Cynthia and Cleve. It is perfectly reasonable for a fact finder to reach different conclusions regarding the evidence presented by Labor Finders and Lenard. *See Gee*, 289 F.3d at 348 (citing *Reeves*, 530 U.S. at 146-88, "a fact finder may infer the ultimate fact of retaliation from the falsity of the explanation."); *Faver v. International Paper Co.*, 196 F. Supp. 2d 441, 445 (E.D. Tex. 2002) (denying summary judgment when material factual disputes remain as to whether complaint of sexual harassment was pretext for termination); *Levias v. Texas Dept. of Criminal Justice*, 352 F. Supp. 2d 751, 769 (S.D. Tex. 2004) (holding that summary judgment is improper when the plaintiff has generated a genuine issue of fact of retaliation).

The Court finds the evidence of pretext, provided by Lenard, in its totality, is sufficient to support a finding that summary judgment is unwarranted at this time. Labor Finders' Motion for Summary Judgment on this claim is DENIED.

### III. CONCLUSION

For the foregoing reasons, Labor Finders' Motion for Summary Judgment [Doc. No. 11] is hereby GRANTED IN PART AND DENIED IN PART. Labor Finders' Motion for Summary Judgment on Lenard's claim of sexual harassment is GRANTED, and that claim is DISMISSED WITH PREJUDICE. Labor Finders' Motion for Summary Judgment on Lenard's claim of retaliation is DENIED.

MONROE, LOUISIANA, this 6th day of October, 2005.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE